UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MICHAEL ABRAHAMS,

                        Plaintiff,

-against-                                         **OPINION & ORDER**
                                                                 **08 CV 02584 (SJF)(WDW)**
INC. VILLAGE OF HEMPSTEAD et al.,

                        Defendants.
----------------------------------------------------------------X
FEUERSTEIN, J.

I.    Introduction

On June 27, 2008, *pro se* plaintiff Michael Abrahams ("Plaintiff") commenced this action against defendants Inc. Village of Hempstead ("Village"); Wayne Hall ("Hall"), as the Village Mayor and as an individual; Perry Pettus ("Pettus"), as the Village trustee and as an individual; Tanya Ford ("Ford"), as the Village Clerk and as an individual; Michelle Banks ("Banks"), as Secretary to the Village Planning Board and as an individual; Debra DeSalvo ("DeSalvo"), as the Village Attorney and as an individual; Willie Dixon ("Dixon"), as Deputy Chief of the Village and as an individual (collectively, the "Village Defendants"); Earlene Hooper ("Hooper"), as New York State Assemblywoman and as an individual; and Samantha Potts ("Potts") (collectively, with Hooper and the Village Defendants, "Defendants"), pursuant to 42 U.S.C. § 1983 ("§ 1983") asserting various federal and state law claims. The Village Defendants now move for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)"). For the reasons set forth herein, the motion of the Village Defendants is granted in part and denied in part. The motion is granted to the extent that: (1) the state law claims against

1

Banks and Ford are dismissed; and (2) the claims for perjury and fraud against Defendants are dismissed. The motion is otherwise denied.

II.     Background[1]

In or about October 2006, Plaintiff was employed by the Village as the Village Administrator. (Compl. ¶ 1.) On or about June 29, 2007, Plaintiff was asked to sign a letter of resignation by Lisa Barrington,[2] the Village Human Resources Director, and DeSalvo, the Village Attorney. (Id. at ¶ 12.) Plaintiff contends that "there was no reason given to [him] . . . why [he] should sign . . ." and that he was "escorted out of Village Hall by Village police . . ." when he refused. (Id.)

The next day, "the Village caused an article to appear in Newsday . . . , " (id. at ¶ 13), which stated, *inter alia*, that: (1) Plaintiff "was terminated "[w]hen he didn't resign;" (2) Newsday received "a sworn affidavit that contained a statement from a woman who said she had had consensual sex with [Plaintiff] on June 13 in a village car" from the office of Assemblywoman Hooper; and (3) Plaintiff's termination was "not connected to the affidavit." (William Murphy, *Village Administrator fired*, NEWSDAY, June 30, 2007 ("June 2007 Newsday article"), attached as Ex. A to Compl.) Plaintiff contends that "[t]he Village released this information to . . . Assemblywoman [Hopper] and to the City of Long Beach Attorney's Office."

---

[1] As is required on a motion pursuant to Rule 12(b)(6), the factual allegations in the Complaint are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of Plaintiff. They do not constitute findings of fact by this court.

[2] Although Plaintiff identifies this individual as Lisa Harrington, the Village Defendants identify her as Lisa Barrington. (Mem. of Law in Supp. of Village Defs.' Mot. to Dismiss Compl., filed Dec. 22, 2008 ("Village Defs.' Mem."), p. 4.)

2

(Compl. ¶ 14.)

Potts, the affiant, later recanted her statements. (Id. ¶¶ 17, 19.)

"Immediately" after Plaintiff's termination, Banks, "in her capacity as [Hall's] Secretary," stated to a "group of Village residents that [Plaintiff] did have sex with [Potts] in the Village vehicle and that the Newsday report was true." (Id. at ¶ 21.) Ford, to whom Plaintiff's Village vehicle was assigned after his termination, "in her capacity as the Village Clerk, telephoned several parties and communicated that [Plaintiff] had sex with [Potts] in the Village vehicle," that she had found a letter to Plaintiff from his wife, and that, "in her capacity as Village Clerk[,] . . . [she] shared the contents [of the letter] with third parties." (Id. at ¶¶ 21, 22.)

On or about May 2008, Plaintiff "discovered that [Desalvo] created a false letter . . . and inserted it in [Plaintiff's] personnel file," (id. at ¶ 23), which stated, *inter alia*, that "[Plaintiff] had made disparaging comments to other employees pertaining to his race."[3] (Letter to Pl. from DeSalvo, dated Oct. 19, 2006, attached as Ex. C to Compl.)

III. Discussion

    A. Rule 12(b)(6)

The standard of review on a motion made pursuant to Rule 12(b)(6) is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of

---

[3] Plaintiff also alleges that, while he was employed by the Village, on or about October 2006, "[Plaintiff] was cornered in [his] office by white supervisors; and they threatened to beat [him] up while using racial epithets." (Compl. ¶ 4.) Plaintiff further alleges that he reported the incident to Hall, who "refused to address the issue." (Id.)

3

specific facts is not required; rather a complaint need only give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). A "formulaic recitation of the elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic, 550 U.S. 555, 127 S.Ct. at 1965 (citations omitted). Accordingly, the applicable standard on a motion to dismiss pursuant to Rule 12(b)(6) requires, at least, allegations "plausibly suggesting (not merely consistent with)," liability. Williams v. Berkshire Fin. Group, Inc., 491 F. Supp. 2d 320, 324 (E.D.N.Y. 2007).

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003); see also Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007). The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002) (citing International Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).

A *pro se* plaintiff's submissions are held "'to less stringent standards than formal pleadings drafted by lawyers . . . .'" Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)).

Indeed, a court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994)). Nonetheless, a *pro se* plaintiff is not exempt from compliance with relevant rules of procedural and substantive law. See Traguth v. Zuck, 710 F.2d 90, 92 (2d Cir. 1983).

B.  Due Process

Plaintiff alleges that Defendants denied him due process because, *inter alia*, (1) "Defendants wrongfully terminated [him];" and (2) "[D]efendants' defamatory conduct has denied [him] the opportunity to earn a living. " (Compl. ¶¶ 34-35.)

The Due Process Clause of the Fourteenth Amendment requires that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. However, "[d]efamation alone, even by a government entity, does not constitute a deprivation of a liberty interest protected by the Due Process Clause." Martz v. Incorporated Village of Valley Stream, 22 F.3d 26, 31 (2d Cir. 1994) (citing Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976)); see also Patterson v. City of Utica, 370 F.3d 322, 328 (2d Cir. 2004). Rather, "some 'stigma plus'" is required "before mere defamation will rise to the level of a constitutional deprivation." Martz, 22 F.3d at 31 (citing Easton v. Sundram, 947 F.2d 1011, 1016 (2d Cir. 1991), cert. denied, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992); Neu v. Corcoran, 869 F.2d 662, 667 (2d Cir. 1989), cert. denied, 493 U.S. 816, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989)). "'Stigma plus' refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' [e.g., the loss of government employment] or property right (the plus), without adequate process." Segal v. City

of New York, 459 F.3d 207, 213 (2d Cir. 2006) (quoting DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir.2003)); see also Patterson, 370 F.3d at 330 (stating that "[l]oss of one's reputation can . . . invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest, such as government employment") (citation omitted).

"[I]n order to demonstrate a deprivation of the stigma component of a stigma-plus claim," a plaintiff must show that: (1) "the government made stigmatizing statements about [him]-statements that call into question [the] plaintiff's good name, reputation, honor, or integrity;" (2) "these stigmatizing statements were made public;" and (3) "the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment." Segal, 459 F.3d at 212 (citations and quotation marks omitted); see also Patterson, 370 F.3d at 330. A "plaintiff also must demonstrate that [his] liberty was deprived without due process of law." Segal, 459 F.3d at 213.

Construing the Complaint liberally and interpreting it to raise the strongest arguments it suggests, as the Court must on a motion to dismiss a *pro se* plaintiff's complaint, Plaintiff has sufficiently alleged a due process violation that is plausible on its face. Plaintiff alleges, *inter alia*, that Hall, Pettus, Dixon and DeSalvo "coerced" Potts into making a false affidavit, "the Village caused" the June 2007 Newsday article, and "the Village released" the information to Hooper and the City of Long Beach. (Compl. ¶¶ 13, 14, 19.) The affidavit stated, *inter alia*, that "in a [Village] vehicle, [Potts] had consensual oral sex with [Plaintiff]," (Potts Aff., attached as Ex. A to Compl.), and the June 2007 Newsday article stated that it received "a sworn affidavit that contained a statement from a woman who said she had had consensual sex with [Plaintiff] . . . in a village car." (June 2007 Newsday article.) Plaintiff further alleges that he "was told by

6

several employers that they could not employ [Plaintiff] because of the information that the Village caused to be disseminated to third parties, particularly Newsday" and that he was told that he was "damaged goods." (Compl. ¶ 24.) "[S]tatements that 'denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession' will satisfy the stigma requirement." Segal, 459 F.3d at 212 (quoting Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630-31 (2d Cir. 1996)).

Plaintiff also alleges that the statements were false and that Defendants knew that they were false. "A plaintiff generally is required only to raise the falsity of these stigmatizing statements as an issue, not prove they are false." Segal, 459 F.3d at 213 n.5 (citations and quotation marks omitted).

In addition, the allegedly stigmatizing statements "were made concurrently with, or in close temporal relationship to," Plaintiff's termination. Segal, 459 F.3d at 212. The affidavit is dated several days prior to Plaintiff's termination and Plaintiff alleges that "Defendants gave the information to [Hopper] before [Plaintiff] was terminated."[4] (Pl.'s Aff. in Opp'n, filed Feb. 17, 2009 ("Pl.'s Opp'n."), ¶ 12.) Contrary to the Village Defendants' contention, Plaintiff's claim does not fail simply because the June 2007 Newsday article was printed one (1) day after Plaintiff was terminated and the statements made by Banks and Ford occurred "immediately"

---

[4] Because Plaintiff is *pro se*, the Court considers the factual allegations raised in the Complaint as well as in his opposition papers. See, e.g., Bordianu v. Educational Broad. Corp., No. 07 Civ. 1762, 2008 WL 1882106, at * 3 (E.D.N.Y. Apr. 24, 2008) (citing Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987)).

7

after Plaintiff's termination, (Compl. ¶¶ 13, 21). See Velez v. Levy, 401 F.3d 75, 89 (2d Cir. 2005) (stating that "[w]hen government actors defame a person and-either previously or subsequently-deprive them of some tangible legal right or status, . . . a liberty interest may be implicated, even though the "stigma" and "plus" were not imposed at precisely the same time) (citations omitted); Patterson, 370 F.3d at 335 (stating, although "the statements were made after plaintiff's termination, . . . in this particular situation, where some of the statements were made within one week of plaintiff's termination, and were made in direct response to requests for reasons for plaintiff's termination, that the proper nexus exists to demonstrate a deprivation of plaintiff's liberty interest that is protected by the Due Process Clause") (citations omitted).

To the extent that Plaintiff alleges that the June 2007 Newsday article stated that "the reasons for Plaintiff's termination were 'not connected to the affidavit'" and that the statements by Banks and Ford "did not relate to the reasons why Plaintiff was terminated," (Village Defs.' Mem. pp. 9, 11), these arguments raise factual issues that are not appropriate on a motion to dismiss. Plaintiff asserts, *inter alia*, that he was terminated without being given a reason. Moreover, the context in which Banks and Ford made the alleged false statements is not before the Court. Such questions are more suitably resolved in a motion for summary judgment.

Plaintiff also alleges that he was denied due process because, *inter alia*, he was terminated without "the rights afforded to [him] as a CSEA member," "was given no warnings or prior disciplinary action," and "[Defendants] never inquired of [Plaintiff] regarding the accusations of [Potts]." (Compl. ¶ 34.) While "the availability of an adequate, reasonably prompt, post-termination name-clearing hearing is sufficient to defeat a stigma-plus claim," Segal, 459 F.3d at 214, "a well-pleaded complaint may proceed even if . . . recovery is very

remote and unlikely." Bell Atlantic, 550 U.S. at 556 (citations omitted); see also Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (stating that "in considering [] a motion to dismiss, [t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims") (citations and quotation marks omitted).

Accordingly, the motion of the Village Defendants' to dismiss Plaintiff's Due Process claim is denied.

C. Section 1983 Claims[5]

1. Municipal Liability

A municipality or municipal entity cannot be held liable under § 1983 on a respondeat superior theory. See Monell v. Department of Soc. Servs. of City of New York, 436 U.S. 658, 691, 98 S.Ct.2018, 56 L.Ed.2d 611 (1978); Linder v. City of New York, 263 F. Supp. 2d 585, 591 (E.D.N.Y. 2003). A municipal entity may only be held liable if the alleged offending conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipal] officers[,] . . . [or] governmental 'custom' even though such a custom has not received formal approval through the [municipality's] official decisionmaking [sic] channels." Monell, 436 U.S. at 690, 98 S.Ct. 2018. The plaintiff must show a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412

---

[5] 42 U.S.C. § 1983 provides, in pertinent part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

(1989).

To establish the existence of a municipal policy or custom, the plaintiff must allege (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees. Moray v. City of Yonkers, 924 F. Supp. 8, 12 (S.D.N.Y.1996); see also Davis v. Lynbrook Police Dept., 224 F. Supp. 2d 463, 478 (E.D.N.Y. 2002).

Contrary to Defendants' contention, Plaintiff's failure to allege any official custom or policy that caused the alleged deprivation of his constitutional rights does not require dismissal of his claim. Construing the Complaint liberally, Plaintiff has pled sufficient facts to withstand a motion to dismiss. Plaintiff alleges wrongful conduct by Hall, the Village Mayor, who very likely has final decision-making authority, which caused the alleged violation of Plaintiff's civil rights.[6] See Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003) (stating that "[a]ctions by an individual with final decision-making authority in a municipality constitute official policy for purposes of a § 1983 claim") (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). Plaintiff asserts, *inter alia*, that Hall "observed" Potts being coerced into signing the affidavit even though he "never believed the

---

[6] Whether the Village Mayor has final decision-making authority is at least a question of fact.

10

facts that were being alleged" and "facilitated the dissemination [of the affidavit] to Newsday." (Pl.'s Opp'n. ¶ 5.) Moreover, Plaintiff alleges that Hall encourages "Village attorneys" to "create false paper trails." (Compl. ¶ 23.)

Accordingly, the motion of the Village Defendants to dismiss Plaintiff's § 1983 claim against the Village is denied.

2. Individual Capacity Claims

"In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Moffitt v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir. 1991) (citing McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert. denied, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065-66 (2d Cir.1989)).

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

Construing the Complaint liberally and accepting all factual allegations as true, Plaintiff alleges sufficient personal involvement of the Village Defendants to survive a motion to dismiss. Plaintiff alleges, *inter alia*, that Hall, Pettus, Dixon and DeSalvo "coerced" Potts into making a false affidavit, and that Ford and Banks made false statements concerning the veracity of the affidavit.

11

Accordingly, the motion of the Village Defendants to dismiss Plaintiff's § 1983 claim against the Village Defendants in their individual capacities is denied.

D. Qualified Immunity

The doctrine of qualified immunity shields government officials from liability for damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 72 L.Ed.2d 396 (1982), or where it was objectively reasonable for them to believe that their acts did not violate those rights. Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed. 523 (1987); see also Almonte v. City of Long Beach, 478 F.3d 100, 109 (2d Cir. 2007) (stating that "an official is entitled to qualified immunity (1) if the plaintiff has not alleged a violation of a constitutional right, (2) if that right was not clearly established at the time of the conduct, or (3) if the official's actions were not objectively unreasonable in light of clearly established law"). "At the motion to dismiss stage of a civil damages action, a defendant is entitled to the shield of qualified immunity if the allegations of the complaint fail to state a claim that his conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known." Charles W. v. Maul, 214 F.3d 350, 356-57 (2d Cir. 2000) (citations and quotation marks omitted). A right is "clearly established" if it is: (1) "defined with reasonable specificity;" (2) if "the decisional law of the Supreme Court or the appropriate circuit court has clearly established the right," or (3) "whether in light of preexisting law the unlawfulness of the defendant official's actions is apparent." Id. at 360.

"[T]he right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause . . . violates a clearly

established right." Groh v. Ramirez, 540 U.S. 551, 578, 124 S.Ct. 1284, 1302, 157 L.Ed.2d 1068 (2004). However, at this stage of the ligation, it is premature for the Court to decide whether the Village Defendants violated Plaintiff's constitutional rights and whether it was objectively reasonable for the Village Defendants to believe that their acts did not violate Plaintiff's constitutional rights. See Ford v. McGinnis, 352 F.3d 582, 598 (2d Cir. 2003) (stating that if the district court finds that the plaintiff's "constitutional rights were violated . . . then [it should] entertain defendants' arguments that they are nevertheless entitled to qualified immunity") (citing Stuto v. Fleishman, 164 F.3d 820, 825 (2d Cir. 1999) (holding courts should first determine whether a constitutional violation occurred before deciding whether qualified immunity exists)); see also Toth ex rel. Toth v. Board of Educ., Queens Dist. 25, No. 07 Civ. 3239, 2008 WL 4527833, at *7 (E.D.N.Y. Sept. 30, 2008) (stating that "[b]ecause [the defense of qualified immunity] 'necessarily involves a fact-specific inquiry, [i]t is generally premature to address the defense of qualified immunity in a motion to dismiss . . . .'") (quoting Bernstein v. City of New York, No. 06 Civ. 895, 2007 WL 1573910, at *9 (S.D.N.Y. May 24, 2007)).

Accordingly, the motion of the Village Defendants to dismiss based upon qualified immunity is denied.

E.   State Law Claims

Plaintiff asserts various state law claims, including, *inter alia*, defamation, fraud, and perjury. Pursuant to 28 U.S.C. § 1367, a federal district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367.

1.   Notice of Claim

13

State notice of claim statutes apply to pendent state law claims in federal court. See Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999); Kyne v. Carl Beiber Bus Servs., 147 F. Supp. 2d 215, 217 (S.D.N.Y. 2001). Under New York law, a notice of claim is a condition precedent to maintaining tort actions against municipalities or any of their officers, agents or employees. See N.Y. Gen. Mun. Law §§ 50-e and 50-I; Hardy, 164 F.3d at 793. The notice of claim must set forth, among other things, the nature of the claim, and must be filed within ninety days of when the claim arises. See N.Y. Gen. Mun. Law §§ 50-e(1)(a) and (2); Hardy, 164 F.3d at 793. Notice of claim requirements are strictly construed, and a failure to comply with the requirements generally requires dismissal of the state law claims. See Hardy, 164 F.3d at 793-94.

It is undisputed that Plaintiff never filed a notice of claim. However, Plaintiff contends that Defendants were acting outside the scope of their employment when they committed the alleged wrongdoing. "[W]hether an individual defendant's alleged conduct occurred within the scope of employment is often a question of fact" but "the court is not precluded from deciding this question as a matter of law where the plaintiff's allegations regarding an individual defendant are limited to conduct that occurred within the scope of employment." See Cortlandt v. Westchester County, No. 07 Civ. 1783, 2007 WL 3238674, at *7 (S.D.N.Y. Oct, 31, 2007) (citations omitted). Unlike Hall, Pettus, DeSalvo and Dixon, Plaintiff's allegations concerning Banks and Ford are limited to alleged wrongdoing that occurred in their capacity as Hall's Secretary and Village Clerk, respectively, thus Plaintiff was required to file a notice of claim with regard to defendants Banks and Ford.

Accordingly, the motion of the Village Defendants to dismiss the state law claims is

granted to the extent that the state law claims are dismissed against Banks and Ford.

        2.      Fraud/Perjury

"The elements of fraud under New York law are: (1) a misrepresentation or a material omission of material fact which was false and known by defendant to be false, (2) made for the purpose of inducing the plaintiff to rely on it, and (3) justifiably relied upon by the plaintiff, (4) who then suffered an injury as a result of such reliance." City of New York v. Smokes-Spirits.Com, Inc, 541 F.3d 425, 454 (2d Cir. 2008) (citations omitted). Even construing the Complaint liberally, the Complaint fails to state a fraud claim that is plausible on its face because, *inter alia*, it is devoid of any factual allegations that Plaintiff relied on any false material fact.

Insofar as Plaintiff asserts a claim for perjury, there is no private right of action for perjury and, thus, this claim is likewise dismissed.[7] See Bennett v. Falcone, No. 05 Civ. 1358, 2009 WL 816830, at * 3 n.7 (S.D.N.Y. Mar. 25, 2009) (citations omitted).

Accordingly, the motion of the Village Defendants to dismiss with respect to Plaintiff's fraud and perjury claims is granted.

---

[7] Although Hooper and Potts have not moved to dismiss or otherwise appeared in this action, Plaintiff's claims for perjury and fraud are dismissed against these defendants for the same reasons stated herein. Insofar as Plaintiff seeks a default judgment against Hooper and Potts, (see Pl.'s Opp'n p.5), such request is denied without prejudice for, *inter alia*, failure to comply with the Federal Rules of Civil Procedure and Rule 4 of this Court's Individual Rules.

IV.     Conclusion

The motion of the Village Defendants to dismiss the Complaint is GRANTED in part and DENIED in part.

**SO ORDERED.**

_____
Sandra J. Feuerstein
United States District Judge

June 2, 2009
Central Islip, New York

Copies to:

Michael Abrahams
5 Brower Lane
Hempstead, NY 11550